UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DENISE L. MARTELL,

       Plaintiff,

vs.                                                      Case No.  3:07-cv-83-J-25MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

       Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, it is recommended the Commissioner's decision be **AFFIRMED**.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and Disability Insurance Benefits ("DIB") in December 2002, alleging an inability to work since December 31, 2001.  (Tr. 46-48).  The Social Security Administration ("SSA") denied the application initially and upon reconsideration.  (Tr. 25-26).  Plaintiff then requested and received an initial hearing before an Administrative Law Judge ("ALJ") on June 17, 2005.  (Tr. 36, 273-315).  On August 25, 2005, the ALJ issued a decision finding Plaintiff not disabled.

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document.  Failure to file timely objections shall bar the party from a de novo determination by a District Judge and from attacking factual findings on appeal.

(Tr. 14-23).  On October 24, 2005, Plaintiff filed a Request for Review by the Appeals Council (Tr. 10) and on December 7, 2006, the Appeals Council denied Plaintiff's Request for Review, thereby making the ALJ's August 25, 2005 decision the final decision of the Commissioner.  (Tr. 4-6).  Plaintiff timely filed her Complaint in the U.S. District Court on February 8, 2007.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    <u>Basis of Claimed Disability</u>

Plaintiff claims to be disabled since December 31, 2001 (Tr. 46) due to depression, chronic obstructive pulmonary disease ("COPD"), an accidental gunshot wound, angina, a stress ulcer and blood clots.  (Tr. 55).

### B.    <u>Summary of Evidence Before the ALJ</u>

Plaintiff was fifty-six (56) years of age on the date of the hearing.  She has a high school education (Tr. 71, 434) and past relevant work experience as a secretary.  (Tr. 56, 67).

Plaintiff's medical history is highlighted in the ALJ's decision and therefore, will not be repeated in full here.  However, the Court will summarize the records and because Plaintiff complains of both physical as well as mental impairments, the Court will examine the records for both her physical and mental impairments.

#### 1.    Physical Impairments

Plaintiff presented at North Florida Regional Medical Center on September 4, 2001 complaining of chest pains and was diagnosed with unstable angina.  (Tr. 110-20).  Plaintiff underwent a "left heart catheterization with left ventriculography and coronary

arteriography."  (Tr. 113).  The procedure demonstrated "normal left ventricular systolic function and widely patent coronary vessels."  Id.  Plaintiff was discharged and "reassured that her chest pain [was] noncardiac in etiology."  Id.  There are no additional records indicating Plaintiff had any further problems with angina.

In February 2002, Plaintiff was seen by a doctor for acute bronchitis.  (Tr. 102-104).  Her doctor advised her to quit smoking.  (Tr. 103).  The bronchitis must have cleared up as there are no further records of Plaintiff seeking treatment for bronchitis.

On October 24, 2002, Plaintiff went to Memorial Hospital emergency room after being accidentally shot in the left leg by her husband.  (Tr. 121-32).  Plaintiff was admitted to the hospital and underwent surgery.  On November 7, 2002, Plaintiff was discharged and it was noted that in her left lower extremity she had good dorsiflexion, plantar flexion, long toe extension and knee extension (although it was somewhat limited due to pain).  (Tr. 125).  Plaintiff returned for a follow-up visit on November 26, 2002 and an ultrasound was completed.  (Tr. 135).  The ultrasound revealed normal blood flow and no evidence of deep venous thrombosis.  Id.  A CT scan was also performed which revealed a "pattern of mild hyperattenuation in the quadriceps."  (Tr. 139).  There was no evidence of a large abscess collection or extensive cellulitis.  Id.  Again, the medical records indicate Plaintiff sought no further treatment for the gunshot wound to her left leg.

On May 28, 2003, Plaintiff underwent a consultative examination with Dr. Joel Caplowitz, M.D.  (Tr. 163-70).  Dr. Caplowitz noted Plaintiff had a history of COPD and that Plaintiff complained of chronic shortness of breath on exertion.  (Tr. 163).  He also noted that Plaintiff continued to smoke a pack of cigarettes daily.  Id.  Plaintiff explained

her history of chest pain and stated that the pain was non-exertional but came on with anxiety.  Id.  Plaintiff also discussed her gunshot wound and stated that her leg was still somewhat weak, gave out on occasion and that she had intermittent cramps in both calves.  Id.  Upon examination, Dr. Caplowitz noted Plaintiff exhibited no evidence of joint swelling, tenderness or deformity and had full range of motion in all joints.  (Tr. 164).  He noted Plaintiff's gait was normal, that she had no difficulty getting on or off the examination table or changing from a lying to a sitting position, and that she was able to rise onto her toes and heels without difficulty.  Id.  Plaintiff also had normal manual dexterity and had no difficulty turning the doorknob, grasping a pen or handling change. Id.  Dr. Caplowitz found Plaintiff oriented times three with no evidence of difficulty with memory or thought disorder.  Id.

In June 2003 and October 2003, two State agency medical consultants performed Residual Functional Capacity assessments ("RFC"s) on Plaintiff.  The first RFC was conducted on June 10, 2003 by Dr. John F. Mannix.  (Tr. 171-78).  Dr. Mannix concluded Plaintiff was:  able to lift and/or carry 50 lbs. occasionally and 25 lbs. frequently, able to stand about 6 hours in an 8-hour workday, able to sit about 6 hours in an 8-hour workday, and able to push and/or pull an unlimited amount (other than as shown for lift and/or carry).  (Tr. 172).  Dr. Mannix found Plaintiff subject to no postural, manipulative, visual or communicative limitations.  (Tr. 173-75).  As far as environmental limitations, Dr. Mannix determined Plaintiff should avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, etc.  (Tr. 175).  Dr. Mannix's conclusions and opinions were very similar to those reached by Dr. Gary Cater, the physician who, on October 6, 2003, completed Plaintiff's second RFC assessment.  (Tr.

218-24).  The notable difference between the two assessments was Dr. Cater found

Plaintiff subject to no environmental limitations.  (Tr. 222).

On April 1, 2005, Plaintiff appeared at Shands in Starke, Florida complaining of

back and neck pain.  (Tr. 231).  Plaintiff was alert times three, well appearing, in no

distress and demonstrated normal judgment, affect and mood.  (Tr. 232).  She had

normal gait and normal range of motion in all extremities and joints.  Id.  Plaintiff was

discharged in stable condition, prescribed percocet, told to apply heat or ice and

informed that she may need physical therapy (although there is no record that she ever

sought physical therapy).  Id.

## 2.    Mental Impairments

The records indicate Plaintiff began seeking treatment for anxiety sometime

before February 2002 as she presented to a doctor at Family Medical and Dental stating

that she had been taking medication for her anxiety in the past and that it "helped her

tremendously."  (Tr. 107).  On April 24, 2002, Plaintiff was complaining of anxiety,

stating that she did not want to go out and asked to be prescribed Paxil and Klonepin.

(Tr. 101).  It appears Plaintiff was prescribed both medications.  Id.

On March 26, 2003, Plaintiff appeared for a psychiatric consultative examination

with Yael S. Frank, Ph.D.  (Tr. 142-44).  Plaintiff discussed her medical problems with

Dr. Frank and told him she suffered an accidental gunshot wound to her leg when she

fell on a gun kept in her home.  (Tr. 142).  Plaintiff also told Dr. Frank that she was

"psychotic and schizophrenic" and that she had posttraumatic stress disorder, but Dr.

Frank noted Plaintiff "did not report any symptoms consistent with these diagnoses."  Id.

Plaintiff denied any alcohol abuse but reported two arrests for DUI's.  Id.  Dr. Frank

found Plaintiff alert and oriented to person, place and time.  (Tr. 143).  He noted her immediate recall was fair, she was able to solve four of four simple math problems, her recent memory was fair, her general fund of information appeared relatively good and she demonstrated the ability to think abstractly.  Id.  However, Dr. Frank noted Plaintiff's remote memory appeared to be mildly impaired and her insight and judgment appeared to be limited.  (Tr. 144).  Dr. Frank opined Plaintiff's physical problems and mood disorder symptoms "may affect her ability to perform work activities."  Id.  Dr. Frank did not, however, provide any specific limitations for Plaintiff and he noted that she was able to manage her finances independently.  Id.

On April 30, 2003, Robin McCallister, Ph.D., completed a Mental Residual Functional Capacity ("RFC") assessment and a Psychiatric Review Technique form (a "PRTF") on Plaintiff.  (Tr. 145-48, 149-62).  Dr. McCallister's mental RFC assessment demonstrated Plaintiff was moderately limited in the ability to: carry out detailed instructions; work in coordination with or proximity to others without being distracted by them (Tr. 145); complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness (Tr. 146).  Dr. McCallister noted Plaintiff may be more productive in more solitary activities.  (Tr. 147).

The PRTF revealed mild restrictions in activities of daily living; moderate restrictions in maintaining social functioning and in maintaining concentration, persistence, or pace; and no episodes of decompensation, each of extended duration.  (Tr. 159).

6

The record contains numerous entries where Plaintiff appeared at Memorial Hospital seeking refills of her Xanax medication.  (Tr. 179-99).  On several occasions, Plaintiff was informed she would not be prescribed any more Xanax without first appearing for a psychiatric visit.  (Tr. 180, 181, 191).

On October 2, 2003, David L. Kirk, Ph.D., completed a second Mental RFC assessment and  PRTF on Plaintiff.  (Tr. 200-203, 204-17).  Dr. Kirk's mental RFC assessment demonstrated Plaintiff was moderately limited in the ability to: understand, remember and carry out detailed instructions.  (Tr. 200).  The PRTF only noted mild restrictions in activities of daily living and in maintaining social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation, each of extended duration.  (Tr. 214).

Finally, the record also contains documents from Clay County Behavioral Health Center.  (Tr. 240-59).  Plaintiff presented on June 30, 2004 for an assessment.  (Tr. 253-59).  Plaintiff was anxious and stressed as a result of having to take care of her ill husband and ailing mother.  (Tr. 258).  Plaintiff's mood was depressed and anxious, she was oriented to person, place, time and situation and had no limitations in her recent or remote memory.  (Tr. 257).  Plaintiff reported the following leisure/recreational interests: watching television, playing cards, cooking, taking care of her husband, working/surfing on the computer, writing poems and journaling.  (Tr. 254).  It was recommended Plaintiff obtain psychological counseling once a week for sixty minutes.  (Tr. 258).  Plaintiff appeared again on September 30, 2004 for another assessment.  (Tr. 246-52).  Again, Plaintiff was demonstrating symptoms of anxiety and reporting stress from being the caregiver to her terminally ill husband and 84-year old mother.  (Tr. 251).  Plaintiff's

mood was anxious, she was oriented to person, place, time and situation and had no limitations in her recent or remote memory.  (Tr. 250).  Plaintiff reported latch-hook, sewing, computer, playing cards, cooking, journaling and writing as her leisure/recreational interests.  (Tr. 247).  Again, it was recommended Plaintiff obtain psychological counseling once a week for sixty minutes.  (Tr. 251).  Plaintiff underwent a psychiatric evaluation on December 7, 2004.  (Tr. 243-45).  Plaintiff reported being very stressed and stated that she had been taking Paxil and Xanax and that they helped, but she had been out of them since March 2004.  (Tr. 243).  Plaintiff was next seen on January 12, 2005 and stated her condition had improved upon taking the Paxil.  (Tr. 242).  Subsequently, Plaintiff appeared on February 24, 2005 and reported that her Xanax had been stolen by a neighbor and that her anxiety was improved with the Paxil.  (Tr. 241).  The final record indicates Plaintiff appeared on April 27, 2005 and stated that she was experiencing much agitation from her husband and therefore, her stress had increased.  (Tr. 240).

During the hearing, Plaintiff testified she no longer drives because of her prior DUI.  (Tr. 278-79).  She also stated she is receiving treatment for her mental impairments once every two weeks.  (Tr. 279).  Plaintiff testified that as a result of her mental impairments, she does not leave the house, she has no motivation, sleeps a lot and does not want to do anything.  (Tr. 280).  Plaintiff stated she has severe depression, difficulty paying attention and difficulty with her memory (although she testified she does not usually have any problems remembering to take her medication).  (Tr. 283-84).  Plaintiff also claimed that as a result of wrist problems, she cannot lift more than five pounds.  (Tr. 281-82).  Plaintiff testified she has difficulty walking, she

8

cannot stand for more than fifteen to twenty minutes because she gets charley horses in her legs, she can only sit for twenty to thirty minutes and cannot go up or down stairs. (Tr. 282-83).  Plaintiff stated that during a typical day she does word search puzzles and washes the dishes.  (Tr. 285).  Plaintiff also pays the bills, does the shopping and the laundry.  (Tr. 287).  Plaintiff denied taking care of her husband and stated that a Veterans' Administration ("VA") nurse comes twice a week for one to one and a half hours to take care of her husband.  (Tr. 286).

Plaintiff's sister also testified that she had not seen Plaintiff for one and-a-half to two years but that previously, Plaintiff provided "wifely duties" for her husband because he was "[r]ather incompetent."  (Tr. 298).  She also stated that Plaintiff was paranoid and neurotic, but she could do her housework.  (Tr. 299).  Finally, she testified that Plaintiff could not walk far after she was shot, had neck problems after a car accident, and had trouble with a bleeding ulcer and depression.  Id.

C.    **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in a substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve (12) months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a).  The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520(a).  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. §§ 404.1520(b).  Second, if a claimant does not have any impairment or a combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a

9

severe impairment and is not disabled.  20 C.F.R. §§ 404.1520(c).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. §§ 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. §§ 404.1520(f).  Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. §§ 404.1520(g).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Social Security Act and was insured for benefits through December 31, 2006.  (Tr. 14).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (Tr. 15).  At step two, the ALJ found Plaintiff had the following severe impairments: status post gunshot wound of the left thigh, COPD, no hearing in her right ear and reduced hearing in her left ear, and an anxiety disorder.  Id.  The ALJ specifically found that Plaintiff's alleged "bilateral wrist disorder, deep venous thrombosis and angina" were not severe impairments under step two of the analysis.  (Tr. 16).  At step three, the ALJ stated "[t]he claimant's impairments neither meet nor are medically equivalent in severity to the criteria of the listed impairments set forth in Appendix 1, Subpart P of the Regulations."  (Tr. 19).

With respect to Plaintiff's RFC, the ALJ found Plaintiff was "capable of performing medium exertional level work, which allows for decreased hearing with normal

10

conversation possible, and provided that it is limited to simple routine tasks." (Tr. 20). The ALJ believed Plaintiff's assertions regarding her subjective claims to be "of only fair credibility." Id.

At step four, the ALJ determined Plaintiff was precluded from performing her past relevant work as a secretary due to her limitation for simple, routine tasks. Id. Accordingly, the ALJ proceeded to step five where he utilized the testimony of a vocational expert (the "VE") who stated Plaintiff's limitations had no effect on the occupational base for medium level unskilled work. (Tr. 21). Thereafter, the ALJ utilized the Medical-Vocational Guidelines (the "grids") as a guideline and determined that based on Plaintiff's "age, educational background, work experience, and residual functional capacity," Plaintiff was able to make a "successful adjustment to work that exists in significant numbers in the national and regional economies." Id. Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 22).

III.   **ANALYSIS**

   A.   **The Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant

11

evidence as a reasonable person would accept as adequate to support the conclusion.

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672

F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as a

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991);

Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view

the evidence as a whole, taking into account evidence favorable as well as unfavorable

to the decision.  Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (explaining the court must scrutinize the entire record to determine the

reasonableness of the factual findings).

**B.    Issues on Appeal**

Plaintiff argues numerous issues on appeal.  (Doc. 15).  Initially, the Court notes

Plaintiff raises a plethora of potential issues, however, Plaintiff has failed to provide any

support (legal or evidentiary) for many of them.  For instance, in a section of the brief

entitled "Other Issues Raised for Appeal," Plaintiff lists ten issues without elaborating on

how the issues are relevant to the instant case or providing legal authority to support the

issues.  (Doc. 15, pp.13-14).  This is not sufficient and the Court will not engage in

speculation as to Plaintiff's arguments regarding these issues.  See Outlaw v. Barnhart,

197 Fed.Appx. 825, 828 n.3 (11th Cir. 2006) (plaintiff waived issue regarding physical

exertional impairments despite listing issue in brief where plaintiff "did not elaborate on

this claim or provide authority about this claim") (citing Cheffer v. Reno, 55 F.3d 1517,

12

1519 n. 1 (11th Cir. 1995) (concluding that issue was waived, even though party's brief listed the issue in the statement of issues, because party provided no argument on the merits of the claim).  Additionally, in the case, <u>Kennedy v. Commissioner of Social Security</u>, 87 Fed.Appx. 464, 466 (6th Cir. 2003), the Sixth Circuit noted that a plaintiff in a social security appeal failed to brief her claim that her impairment met a listing. Instead, the plaintiff requested in a footnote that the Court consider that issue.  <u>Id.</u>  The court found the un-briefed issue to be waived.  <u>Id.</u> (citing  <u>United States v. Elder</u>, 90 F.3d 1110, 1118 (6th Cir. 1996) (issues which are "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived")). Accordingly, the Court will not consider the issues not fully briefed by Plaintiff's counsel.

The Court now turns to the issues actually briefed by Plaintiff.  Plaintiff's brief points to two areas of concern.  First, Plaintiff argues the ALJ erred in failing to consider or misrepresenting Plaintiff's testimony, the testimony of Plaintiff's sister and the testimony of the VE.  (Doc. 15, pp. 6-12).  Finally, Plaintiff argues the ALJ erred in his determination Plaintiff could perform medium level work.  (Doc. 15, pp. 8-9).  The Court will address each of these arguments.

## 1.   **<u>Did the ALJ improperly fail to consider or misrepresent evidence?</u>**

Plaintiff's first argument is that the ALJ failed to properly consider or misrepresented testimony by Plaintiff, Plaintiff's sister and the VE.

### a.   **<u>Plaintiff's testimony</u>**

Plaintiff initially points to her testimony regarding her subjective complaints and appears to argue that the ALJ erred by failing to consider them.  During the hearing,

Plaintiff testified she can no longer drive as a result of a DUI.  (Tr. 278-79).  Plaintiff stated she can only lift approximately five pounds as a result of problems with both her wrists.  (Tr. 281-82).  She further stated she can possibly walk the distance of two houses, cannot walk down stairs and can only stand for approximately fifteen to twenty minutes.  (Tr. 282-83).  Plaintiff testified she is able to sit for twenty to thirty minutes.  (Tr. 283).  Plaintiff's mental impairments cause her to stay home, to have no motivation and to sleep a lot (she takes a nap every day).  (Tr. 280).  Plaintiff does not want to be around people and claims she has difficulty maintaining concentration and remembering things.  (Tr. 283-84).  Plaintiff spends her days doing word search puzzles and washing dishes.  (Tr. 285).  A review of the ALJ's decision indicates the ALJ considered Plaintiff's subjective complaints but rejected some of them because he found Plaintiff's testimony not credible.  (Tr. 19).

The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §404.1528. When a claimant attempts to establish disability through her own testimony regarding pain or other subjective symptoms, the Eleventh Circuit employs the three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).

14

In this case, although the ALJ mentioned the requirement that he consider Plaintiff's subjective allegations pursuant to 20 C.F.R. §404.1529 and Social Security Ruling ("SSR") 96-7p, the ALJ did not specifically cite the Eleventh Circuit pain standard. However, it appears he correctly applied the pain standard.

The first part of the pain standard, evidence of an underlying medical condition, is implicit in the ALJ's finding that Plaintiff suffered from severe impairments.[2] Furthermore, the ALJ must have found Plaintiff had objective medical conditions that could give rise to the alleged symptoms, because otherwise, he was not required to assess the credibility of Plaintiff's allegations.  As such, the ALJ was required to consider Plaintiff's subjective complaints of pain and other symptoms.  The ALJ did so and found them "only fairly credible" and "not supported by the medical evidence."  (Tr. 19).

Where an ALJ decides not to credit a claimant's testimony about pain and subjective allegations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  <u>Jones v. Department of Health and Human Services</u>, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  In the instant case, the ALJ stated the following as his reasons for discrediting Plaintiff's subjective testimony:

> [Plaintiff] initially gave a report of accidentally being shot in the leg by her husband, then stated that she fell on a gun that was kept in her home.  There is no evidence to support that she is as limited as she is alleging.  She is able to care

---

[2] The ALJ found Plaintiff had the following severe impairments: status post gunshot wound of the left thigh, COPD, no hearing in her right ear and reduced hearing in her left ear, and an anxiety disorder.  (Tr. 15).

15

> for her husband who is ill with cancer and suffers from
> dementia.  Furthermore, physical examinations have shown
> no residuals from the gunshot wound.  Her hearing loss has
> not adversely affected her ability to communicate.  And she
> is able to perform activities of daily living.

(Tr. 19).  Plaintiff argues the ALJ did not provide adequate reasons for discrediting

Plaintiff's testimony and takes issue with the ALJ's statements that she is able to care

for her husband and that her hearing loss has not adversely affected her ability to

communicate.  (Doc. 15).

The Court initially notes that the ALJ pointed to Plaintiff's conflicting statements

regarding her gunshot wound.  The record shows that when Plaintiff presented to

Memorial Hospital after being shot, she reported that she was accidentally shot by her

husband.  (Tr. 124).  However, at a later psychiatric examination with Dr. Frank, Plaintiff

reported that she "fell on a gun that was kept in her home."  (Tr. 142).  The Court agrees

that the ALJ could consider this discrepancy in evaluating Plaintiff's credibility.

The ALJ also stated that Plaintiff was able to care for her ill husband.  Plaintiff

disputes this finding and points out that during the hearing, Plaintiff stated she did not

care for her husband because the VA sent out a nurse twice a week.  (Tr. 285).

However, Plaintiff further testified that the nurse only came for about one to one and-a-

half hours.  (Tr. 286).  Plaintiff stated the nurse started coming in April of 2005.  (Tr.

285).  Although Plaintiff stated she did not provide care to her husband prior to the

nurses coming to her home (Tr. 286), the medical records reveal that Plaintiff told

individuals at Clay County Behavioral Health Center on numerous occasions that she

was experiencing stress as a result of being the caregiver to her ill husband and elderly

mother.  (Tr. 242, 251, 258).  Accordingly, the Court believes the ALJ's finding that

16

Plaintiff provided care for her husband to be supported by substantial evidence and further provides support for his determination that Plaintiff's testimony was not entirely credible.

Plaintiff also takes issue with the ALJ's finding that Plaintiff's hearing impairments did not adversely affect her ability to communicate.  Plaintiff points to the hearing transcript which demonstrated many instances where Plaintiff had to have a question repeated so she could hear it.  (Doc. 15, pp. 9-10).  However, Plaintiff does not point to and the undersigned could not locate any other records supporting Plaintiff's claim that she could not engage in normal conversation.  None of the medical professionals meeting with Plaintiff indicated she could not converse with them and as Defendant points out, the individual conducting Plaintiff's teleclaim noted no difficulty in Plaintiff's ability to hear.  (Tr. 65).  Thus, the ALJ's finding that Plaintiff was able to engage in normal conversation is supported by substantial evidence.

In addition, the ALJ considered the medical evidence and found that it simply did not support Plaintiff's allegations regarding her limitations.  With respect to physical limitations, Plaintiff alleged an inability to lift greater than five pounds due to wrist problems, difficulty walking, problems sitting for more than twenty to thirty minutes or standing more than fifteen to twenty minutes.  Plaintiff also claimed her mental impairments cause her to take naps every day, stay home, to have no motivation and have difficulty maintaining concentration and remembering things.  As for Plaintiff's claim that her ability to concentrate and her memory are impaired, the ALJ obviously credited her testimony somewhat.  He found Plaintiff only able to perform jobs limited to simple, routine tasks.  (Tr. 20).

With respect to the remaining limitations, the Court agrees with the ALJ's conclusion that they are not supported by the medical records.  Indeed, Plaintiff does not cite to any medical evidence supporting her claims.  There is no record of Plaintiff seeking any treatment for or even complaining about her wrists.  Dr. Caplowitz, who performed a consultative examination noted that Plaintiff had full range of motion in all joints and that her manual dexterity was normal (she had "no difficulty turning the doorknob").  (Tr. 164).  Additionally, Dr. Caplowitz noted Plaintiff had no problems getting on or off the examining table or alternating between a lying down or sitting up position.  Id.  Dr. Caplowitz noted Plaintiff's gait was normal and that she was able to rise onto her toes and heels without difficulty.  Id.  Plaintiff was shot in the leg in October 2002 and it appears she received treatment for that injury until December 2002.  Indeed, the medical records indicate Plaintiff did not receive any treatment between December 2002 and May 2005.  There are no records indicating Plaintiff had any limitations as a result of that injury.  Plaintiff sought treatment at Shands Healthcare on April 1, 2005 for head and neck pain.  (Tr. 229-39).  Plaintiff was diagnosed with cervical strain/tension, prescribed some percocet, released and told to return if the pain did not improve in 48 hours.  (Tr. 232).  There is no record that Plaintiff returned.  Accordingly, there is nothing in the record to support Plaintiff's claims regarding her remaining limitations, including her claim of being unable to walk, stand or sit for long or being required to take naps every day.  Therefore, the undersigned finds the ALJ's holding that the medical evidence did not support Plaintiff's allegations regarding her limitations to be supported by substantial evidence.

Finally, the ALJ considered Plaintiff's ability to perform daily life activities in

evaluating her credibility.  This is appropriate and supports his finding that Plaintiff's subjective allegations were not entirely credible.  Once again, Plaintiff does not point to any evidence in the record (save her testimony) to support her allegations.  Plaintiff herself testified that she was able to do word search puzzles, wash dishes, go shopping, pay the bills and do laundry.  (Tr. 285, 287).  The medical records also indicate Plaintiff could take care of her own hygiene and dressing, sewed, did latch-hook, spent time on the computer, played cards, cooked, watched television, wrote poems and engaged in journaling.  (Tr. 247, 254).  These activities are not entirely consistent with an individual suffering from the limitations Plaintiff alleges.  However, these activities of daily living do not fully discredit Plaintiff's allegations.  Were these the only justification provided by the ALJ for discrediting Plaintiff's claims, the Court would be concerned.  In this case, the ALJ provided numerous reasons for his credibility analysis and therefore, the Court finds no error.

Accordingly, the undersigned finds the ALJ properly considered and discounted Plaintiff's testimony regarding her subjective limitations.  The ALJ provided adequate reasons for his finding and those reasons are supported by substantial evidence.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

### b.    Plaintiff's sister's testimony

Next, Plaintiff complains the ALJ failed to consider the testimony of Plaintiff's sister, Mary Wickham, who testified at the hearing.  Plaintiff is correct that the ALJ did not reference Ms. Wickham's testimony, however, Plaintiff only points to a few statements by Ms. Wickham: that Plaintiff had mental problems for a long time and was

19

neurotic and paranoid, that Plaintiff always had trouble with depression and that Plaintiff

only worked for the family moving/storage business.  (Doc. 15, p.7).  The Court does not

believe the ALJ's failure to address these statements by Ms. Wickham warrants

reversal.

The regulations state that, in addition to medical sources, the Commissioner:

> may also use evidence from other sources to show the
> severity of your impairment(s) and how it affects your ability
> to work.  Other sources include ... spouses, parents and
> other caregivers, siblings, other relatives, friends, neighbors,
> and clergy.

20 C.F.R. § 404.1513(d)(4).  "[T]he regulation itself does not impose an absolute rule,"

but rather, "lay evidence is considered when, for example, 'medical records are sparse

and do not provide adequate documentation of [ ] symptoms.'"  See v. Astrue, 2007 WL

2318103 at *12 (E.D. Cal. 2007) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.

1996)).  Moreover, an ALJ is not required to discuss all evidence presented to him.

Instead, the ALJ must explain why "significant probative evidence has been rejected."

Vincent v. Heckler, 739 F.2d 1393, 1394-1395 (9th Cir. 1984) (upholding ALJ's decision

even where ALJ failed to discuss testimony of two lay witnesses and one medical

witness).

In the instant case, the testimony by Plaintiff's sister is not significant probative

evidence.  In fact, the Court is not certain how it helps Plaintiff's argument that she is

disabled.  Ms. Wickham's testimony did not include any statements regarding Plaintiff's

limitations.  Rather, Ms. Wickham testified Plaintiff was able to do normal housework.

(Tr. 299).  As such, any failure by the ALJ to discuss Ms. Wickham's testimony is not

reversible error.  Moreover, to the extent Ms. Wickham's testimony corroborates that of

the Plaintiff, the ALJ implicitly found Ms. Wickham's testimony incredible based on his explicit finding that Plaintiff's testimony was not credible.  See East v. Barnhart, 197 Fed.Appx. 899, 901 n.3 (11th Cir. 2006) (finding no error in the ALJ's failure to explicitly accept or reject the daily activities questionnaire completed by claimant's mother because the ALJ obviously implicitly found the mother's statements not credible where the questionnaire essentially "duplicated and corroborated" the claimant's testimony, which the ALJ explicitly found not credible) (citing Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) ("'[T]his circuit does not require an explicit finding as to credibility,' but rather findings may be by implication if they are 'obvious to the reviewing court'); see also Orcutt v. Barnhart, 2005 WL 2387702 *10 (C.D. Cal. 2005) ("[w]hile lay witness testimony should generally not be ignored without comment, an ALJ's failure to explain his rejection of such testimony constitutes harmless error when that testimony does little more than corroborate plaintiff's testimony and adds nothing of substance to the record"); Hunsaker v. Barnhart, 2005 WL 3271485 **10 (W.D. Va. 2005) (no error for the ALJ to disregard statements by lay witness where they are not necessary to the ALJ's decision and not supported by medical records).

### c.     The VE's testimony

Next, Plaintiff argues the ALJ erred in failing to properly consider the VE's testimony.  Specifically, Plaintiff takes the position that the ALJ posed an incomplete hypothetical to the VE and that the ALJ improperly substituted his opinion for that of the VE.  (Doc. 15, pp. 8,12).  Initially, Plaintiff claims the ALJ posed an incomplete hypothetical to the VE as he failed to include all of Plaintiff's limitations such as her inability to lift more than five pounds on account of her wrists, her use of a walker and

21

cane, her anxiety-related reclusiveness and her need for daytime naps.  (Doc. 15, p.8).

The Plaintiff is correct that case law in this circuit requires the ALJ to employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant.  Pendley v. Heckler, 767 F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  Id. at 1561 (quoting Brenam v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)).  Here, the ALJ asked the VE whether there would be any reduction in the medium unskilled occupational base for a hypothetical 55-year old claimant limited to medium exertional level work with Plaintiff's past relevant work experience, a high school education and "decreased hearing, but normal conversation is possible" and the ability to perform only "simple routine tasks."  (Tr. 306).  The VE responded that the non-exertional limitations posed by the ALJ would not preclude work but that the decreased hearing would be "more inconvenient."  (Tr. 307).  The ALJ then proceeded to utilize the grids to determine Plaintiff was not disabled.  (Tr. 21).

The Court finds the hypothetical posed by the ALJ to be proper.  While the hypothetical does not reference Plaintiff's wrist complaints, her reclusiveness or her need for naps, the ALJ specifically found Plaintiff's testimony regarding these alleged limitations not credible.  Additionally, as noted in the previous section, Plaintiff has pointed to no evidence in the record to support these alleged limitations.  As the Court held the ALJ properly found Plaintiff's allegations regarding her subjective limitations not credible, the Court finds no error in the ALJ failing to include limitations based on

Plaintiff's wrist complaints, her reclusiveness or her need for naps.  As for Plaintiff's use

of a walker or cane, there is again no evidence to support this claim.  Plaintiff's brief

mentions use of a cane and walker, however, she does not provide any details such as

when she used the cane/walker or who prescribed it and the medical records do not

show any provider recommending or prescribing a cane or walker.[3]  Accordingly, the

hypothetical posed by the ALJ is supported by substantial evidence.

     Plaintiff also argues the ALJ improperly substituted his opinion for that of the VE.

Specifically, Plaintiff claims the ALJ erred in failing to have the VE specify the available

jobs at step 5 of the sequential analysis.  Rather than allowing the VE to state the

specific available jobs for Plaintiff, the ALJ utilized the grids as a framework and

determined that Plaintiff was not disabled.  (Tr. 21).

     As noted above, once the ALJ assesses a claimant's RFC, the ALJ proceeds to

determine what, if any work the claimant is capable of performing.  If the claimant is

unable to perform any of her past relevant work, the burden shifts to the Secretary to

show that there is other work in the national economy that the claimant can perform.

Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985).  While conducting this

analysis, the ALJ may, in appropriate circumstances, use the grids in lieu of vocational

testimony.  See Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (quoting

Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992)).  Exclusive reliance on the

grids is improper, however, when the claimant cannot perform a full range of work at a

---

[3]  Indeed, the only record the Court can find of Plaintiff using a walker was immediately after her gunshot wound in 2002.  There is no indication she continued to use a walker and when she was examined by Dr. Caplowitz in May 2003, Plaintiff had normal gait and no difficulty getting on or off the examination table.  (Tr. 164).  Additionally, Plaintiff's attorney acknowledged at the hearing on June 17, 2005 that Plaintiff was no longer using a cane or walker.  (Tr. 311).

given exertional level or "when claimant has a non-exertional impairment that significantly limits basic work skills." Foote, 67 F.3d at 1558 (internal quotation marks omitted).

In the present case, the ALJ determined Plaintiff was capable of performing a full range of work at the medium exertional level.  He then inquired of the VE whether Plaintiff's non-exertional limitations: decreased hearing (with normal conversation possible) and limited to simple routine tasks, would have any significant effect on the medium unskilled occupational base.  (Tr. 306-07).  The VE responded that they would not.  (Tr. 307).  Accordingly, it was proper for the ALJ to utilize the grids as a framework and determine Plaintiff was capable of performing work which existed in significant numbers in the national economy.  Therefore, the ALJ did not err in utilizing the grids rather than having the VE list examples of specific jobs Plaintiff would be able to perform.

### 2. Did the ALJ err in determining Plaintiff could perform medium level work?

Finally, Plaintiff argues the ALJ erred in finding Plaintiff capable of performing medium level work.  (Doc. 15, pp. 8-9).  First, Plaintiff takes issue with the ALJ's reference to Plaintiff's past relevant work, which he characterized as being at the medium exertional level.  In her brief, Plaintiff characterizes her lifting of fifty pounds as being "extraordinary and occasional," however, there is no evidence in the record to support this description.  Plaintiff did not testify about it at the hearing and the only records regarding Plaintiff's prior work consist of forms filled out by Plaintiff in which she listed fifty pounds as the heaviest weight she lifted.  (Tr. 56, 68).  In any event, the ALJ

24

found Plaintiff unable to return to her past relevant work, so whether her prior job as a secretary was described as a medium exertional level job or not is of no consequence. What is relevant is whether the ALJ erred in determining that Plaintiff's RFC allowed her to perform medium level work.

Plaintiff takes issue with the ALJ's finding that she could perform medium level work and states that there is no evidence from which it could be determined she was capable of working at the medium exertional level. Plaintiff acknowledges that the two non-examining state agency doctors who completed physical RFCs both rated Plaintiff as meeting the requirements for medium level work. However, Plaintiff takes the position that "[o]pinions of state agency reviewers are given little or no weight in the 11th Circuit." (Doc. 15, p.9). Plaintiff is correct insofar as the Eleventh Circuit has determined that "the opinion of a non-examining physician is entitled to little weight **if it is contrary to the opinion of the claimant's treating physician**." Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (emphasis added) (citing Spencer ex rel. Spencer v. Heckler, 765 F.2d 1090, 1093-94 (11th Cir. 1985)). In this case, there is no opinion of a treating physician to the contrary. Indeed, there is no medical evidence supporting any limitations other than those established by the ALJ. In determining Plaintiff's RFC, the ALJ considered not only the opinions of the non-examining physicians, but also the other medical records – just as he was required to do. The Court finds the ALJ's determination regarding Plaintiff's RFC is supported by substantial evidence.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported

by substantial evidence and is based upon the proper legal standards.  Accordingly, it is hereby

RECOMMENDED:

The Commissioner's decision be **AFFIRMED**.

**DONE AND ENTERED** at Jacksonville, Florida, this __22nd__ day of February, 2008.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Honorable Henry Lee Adams, Jr.,
        United States District Judge